No. 19,434.

Norma Lasnetske *v.* Lennie Parres, et al.
(365 P. [2d] 250)

Decided October 2, 1961.

Mr. GAIL H. HADDOCK, Mr. PAUL S. DWYER, Mr. MYRON H. BURNETT, for plaintiff in error.

Mr. DUANE O. LITTELL, Mr. JAMES E. ALGEO, for defendants in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

SHORTLY after 8 o'clock on an evening in late September two automobiles violently collided within the intersection of East 18th Avenue and York Street in Denver. One of the two automobiles involved was jointly owned by Lennie and Doloris Parres, who were husband and wife. Just prior to the crash this vehicle was being driven by Lennie Parres in a southerly direction on York Street, approaching the East 18th Avenue intersection from the north. Doloris Parres was seated beside him on the front seat.

The other vehicle involved was owned and operated by Norma Lasnetske, who just before the impact had

been driving in a northerly direction on Josephine Street, which at this point leads into and in fact terminates in the intersection of East 18th Avenue and York Street. Lasnetske intended to negotiate a left-hand turn and proceed in a westerly direction on East 18th Avenue. However, before she could complete her left-hand turn she was struck broadside (on the right side) by the front end of the Parres' vehicle. Parres, until his forward progress was abruptly stopped, intended to go on through this intersection and proceed southward on York Street.

The present litigation has its origin in the accident briefly outlined above. In their complaint Lennie and Doloris Parres as joint owners made claim for property damage to their automobile in the amount of $905. Doloris Parres separately prayed for $15,000 for personal injuries and resulting damages suffered by her in the unfortunate accident. Lennie Parres similarly made claim for $10,000 for his injuries, and also asked for an additional $5,000 for alleged loss of consortium. Each also alleged that their respective damage was the direct result of Lasnetske's negligence.

By answer Lasnetske admitted the fact of the accident, but otherwise denied all, and affirmatively alleged contributory negligence on the part of both Lennie and Doloris Parres. Lasnetske also filed a counterclaim in which she prayed for $41,400 for damage to her automobile and for the serious personal injuries suffered by her in the crash.

Upon trial the jury by appropriate verdicts rejected all claims made by the Parreses and likewise rejected the counterclaim of Lasnetske. Lasnetske's motions for judgment in her favor on her counterclaim notwithstanding the verdict of the jury, or in the alternative for a new trial, were denied. By the present writ of error Lasnetske seeks reversal of the judgment dismissing her counterclaim.

The one plaintiff, Doloris Parres, also filed a motion for a new trial, contending that the trial court errone-

ously instructed the jury that the negligence, if any, of Lennie Parres, was imputed as a matter of law to Doloris Parres. This motion was also denied. Doloris Parres assigns cross-error to the judgment dismissing her claim against Lasnetske.

It is the ultimate contention of Lasnetske that the trial court erred in denying her motion for a directed verdict in her favor on her counterclaim. She argues that the Parreses were guilty of negligence *as a matter of law,* and conversely, that she was free of contributory negligence *as a matter of law,* and that under such circumstances the only issue which should have been submitted to the jury was that of her damages.

█ It is well settled in this state that the issues of negligence, contributory negligence and proximate cause are matters generally to be resolved by the trier of the facts, and it is only in the clearest of cases, where the facts are undisputed and reasonable minds can draw but one inference from them, that the question of what constitutes reasonable care is ever one of law to be decided by the Court. See *Yockey Trucking Company, Inc. v. Handy,* 128 Colo. 404, 262 P. (2d) 930, and *Gray v. Turner,* 142 Colo. 340, 350 P. (2d) 1043. Careful consideration of the record in the instant case convinces us that the trial court was eminently correct in its determination that these issues should properly be resolved by the jury.

█ It is Lasnetske's specific contention that inasmuch as she and her passenger both testified that she entered the intersection of East 18th Avenue and York with the green arrow, such testimony establishes beyond peradventure that she *lawfully* entered the intersection. Such being the case, she then contends that an appropriate municipal ordinance gives her the right of way over Parres, even though the latter may have actually had the green light when he entered the intersection from the north. Cross-examination disclosed that on an occasion sometime after the accident but before trial, Las-

netske and her passenger made statements which the Parreses, at least, felt were inconsistent with their testimony at the trial. Be that as it may, the mere fact that Lasnetske testified that she had the green arrow when she entered the intersection preparatory to making a left-hand turn is not conclusive of the matter, nor does the fact that her passenger corroborated her testimony necessarily transmute it into the gospel truth. And such is true even though there be no direct testimony contradicting it. In *Swanson v. Martin,* 120 Colo. 361, 209 P. (2d) 917, we said:

"It is of course fundamental that it is the sole province of the jury to determine issues of fact where there exists a conflict with regard thereto. It is also true that a court is not bound to accept a statement as true because there is no direct testimony contradicting it. * * * The testimony of a party to a suit, upon an issue raised by the pleading, does not, as a matter of law, establish the truth, and take from the jury the right and the duty to determine the issue concerning which he testifies, even though no evidence in contradiction thereof be produced on the trial. * * * Reasonable inferences from circumstances tending to discredit or weaken such testimony should be considered."

In the instant case there are numerous factual disputes and the inferences deducible therefrom are in sharp conflict. For example, Lennie Parres testified that he was proceeding at a lawful rate of speed (28 to 30 miles per hour) on York Street and that when he was approximately 150 feet north of the East 18th Avenue intersection he saw the signal light regulating his movements change from red to green. As concerns the sequence of these particular signal lights, the traffic engineer for Denver testified that the green arrow permitting left-hand turns for northbound traffic on Josephine Street "went off" two to three seconds before southbound traffic on York Street got the green light. Based on the foregoing testimony the jury could have logically

concluded that if Lasnetske had actually entered the intersection on the green arrow, she would have had ample time to clear the intersection before Parres got within striking range. Since such unfortunately was not the case and the Lasnetske car was in fact struck by the Parres' car, the jury *could* infer that since Parres was on York Street about 150 feet north of the East 18th Avenue intersection when the light turned green, Lasnetske had not actually entered the intersection on the green arrow, but more probably entered moments *after* the green arrow was off. In other words, *if* the Parres' vehicle actually was 150 feet north of this intersection when the green light was exhibited for them, and *if* the green arrow for northbound traffic on Josephine was turned off two to three seconds before the green light for southbound traffic on York Street came on, then the jury could logically infer that Lasnetske could not have *entered* the intersection with the green arrow. The foregoing recitation is only intended to be illustrative of the fact that actually the conflict in the evidence and the inferences deducible therefrom was such that the trial court quite properly submitted the issues of negligence, contributory negligence and proximate cause to the jury.

Doloris Parres by cross-assignment of error complains of the following instruction:

"You are instructed that if you find and believe from a preponderance of the evidence that the plaintiff Lennie Parres was guilty of negligence, then the plaintiff Doloris Parres was also guilty of negligence because she was a joint owner of the automobile and the automobile was being used for their joint convenience * * *."

The undisputed evidence which allegedly warranted the giving of this instruction was that both Lennie and Doloris Parres were gainfully employed and that each contributed their respective earnings to the maintenance of the household; that the automobile was jointly owned by them; that Doloris Parres shortly before the accident had completed her work for the day and had

called and requested Lennie to pick her up; that he did in fact pick her up at her place of employment and at the time of the accident they were en route to their home. In *Moore v. Skiles,* 130 Colo. 191, 274 P. (2d) 311, we said:

"We recognize that the authorities are divided on the question of imputability of negligence of the driver to a non-driving passenger in the automobile. We, however, believe that the more reasonable and commonsense view is that the owner or joint owner, riding as an occupant in his own car, using the car for a purpose in common with the driver is presumed to have a right to control the driver and a right to manage and direct the movements of the car. Whether the husband's driving of the vehicle was at the husband's or wife's request, or by his assuming the wheel and she silently acquiescing, makes no difference."

\* \* \*

"Where, as here, joint ownership of the car is shown; where joint occupancy and possession of the vehicle is admitted, and where the occupant-owners of the car use it upon a joint mission, the driver will be presumed to be driving for himself and as agent for the other present joint owner. We therefore, conclude that the trial court did not err in submitting Instruction No. 4 to the jury."

Counsel for Doloris Parres does not ask us to overrule *Moore v. Skiles,* supra, but rather suggests that there is one additional fact and circumstance in the instant case not present in the *Moore* case. Here it was established that Doloris Parres did not have a driver's license and in fact did not know how to operate an automobile. It is argued that this fact takes the case out from under the rule announced in the *Moore* case. It is true that certain courts have attached significance to the fact that the co-owning passenger does not know how to drive. So, in *Parker v. McCartney,* 216 Ore. 283, 338 P. (2d) 371 (1959), the Supreme Court of Oregon in rejecting the rule adopted by this Court in *Moore v. Skiles,* supra,

pointed up what they felt would be the incongruous result that would follow in the situation where a passenger who jointly owned the car did not know how to drive it. Suffice it to say that Oregon elects to follow a rule of law in this particular contrary to that preferred and adopted by this Court in the *Moore* case.

As was stated in the *Moore* case, "The question is not solely whether the passenger actually exercised control over the driver, but whether the occupant had the right to exercise such control over the driver, or that the occupant and the driver * * * had a right jointly to control its operation." The "right to exercise control" is not dependent upon the ability of the passenger to actually drive the vehicle. It is not contemplated that a co-owning passenger in exercising his right to control will physically wrest the wheel from the driver. Rather, verbal admonition, suggestions or even outright commands are the usual methods whereby the co-owning passenger exercises his right to control. It is a well-known fact that some of the better "back seat" drivers are those who know little, or nothing, about the actual driving of the vehicle, but can nonetheless still offer friendly advice, if not flat commands, to the driver.

In *Matheny v. Central Motor Lines, Inc., et al.,* 233 N.C. 681, 65 S.E. (2d) 368, the Supreme Court of North Carolina stated: "The fact that the plaintiff was co-owner and occupant of the automobile and that it was being driven at the time by her husband with her consent for the *common benefit and purpose* of both would seem to establish the essential elements of a "joint enterprise." (Emphasis supplied.) In the instant case the *sole* purpose of the ill-fated journey was to render a benefit to the one plaintiff, Doloris Parres. We see no good reason to depart from the rule announced in the *Moore* case, and stare decisis dictates that we must reject the contention of Doloris Parres and hold that the trial court properly instructed the jury that the negli-

gence, if any, of Lennie Parres was as a matter of law transferred and imputed to Doloris Parres.

The judgment is affirmed.

MR. JUSTICE DOYLE dissents.